**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**


DAVID DARYL BROWN,                    :
                                      :   Civil Action No. 09-2610 (RMB)
              Plaintiff,              :
                                      :
                                      :
          v.                          :
                                      :
WARDEN SHAWN THOMAS,                  :
                                      :
              Defendant.              :


                              - AND-


DAVID DARYL BROWN, JR.,               :
                                      :   Civil Action No. 09-4478 (RMB)
              Plaintiff,              :
                                      :
                                      :
          v.                          :
                                      :
SEAN M. THOMAS,                       :
                                      :
              Defendant.              :


**APPEARANCES:**

        DAVID DARYL BROWN, JR., Plaintiff <u>pro se</u>
        # 172405
        Atlantic County Justice Facility
        5060 Atlantic Avenue
        Mays Landing, New Jersey 08330

**BUMB**, District Judge

        Plaintiff, David Daryl Brown, a state inmate currently

confined at the Atlantic County Justice Facility in Mays Landing,

New Jersey, seeks to bring the two above-captioned actions <u>in</u>

<u>forma pauperis</u> ("IFP").  The first action, Civil No. 09-2610

(RMB), was administratively terminated by Order of this Court, entered on June 3, 2009, because Plaintiff had submitted an incomplete IFP application.  On or about July 2, 2009, Plaintiff submitted a complete IFP application, and asked that the Court re-open his case.

Thereafter, on or about August 31, 2009, Plaintiff brought a second action captioned above, Civil No. 09-4478 (RMB), against the very same defendant, and alleging similar claims involving common questions of law and fact as set forth in his first action, Civil No. 09-2610 (RMB).  Plaintiff submitted a complete IFP application with his second action.  Based on Plaintiff's affidavits of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Plaintiff's IFP applications, pursuant to 28 U.S.C. § 1915(a) (1998), and order the Clerk of the Court to file both Complaints.

At the outset, the Court has determined, <u>sua</u> <u>sponte</u>, that the two actions filed by Plaintiff should be consolidated, pursuant to Fed.R.Civ.P. 42(a), because the actions involve common questions of law and fact against the same defendant. Moreover, having reviewed the Complaints to identify cognizable claims pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court concludes that the Complaints should proceed in part as consolidated under the first docket number, Civil No. 09-2610 (RMB).  The Clerk of the Court will be directed to close the file

2

with respect to the second filed matter docketed as Civil Action No. 09-4478 (RMB); however, the pleadings filed in the second action, Civil No. 09-4478 (RMB) shall be docketed in the first matter, Civil No. 09-2610 (RMB), as an amended or supplemental Complaint.

## I.   BACKGROUND

Plaintiff, David Daryl Brown, Jr. ("Plaintiff"), brings these civil actions against defendant, Sean M. Thomas, as Warden of the Atlantic County Justice Facility.[1] (Complaint, Caption). The following factual allegations are taken from the Complaints, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Plaintiff alleges that, on April 2, 2009, he awoke to pain from what he believed to be a spider bite on his left thigh.  As the day progressed, so did the pain, and Plaintiff filled out a sick call request to be seen by the medical department the next day.  He was not seen or treated by the medical department as requested that day.  (Complaint, Statement of Claims at ¶ 4).

---

[1]   In his initial Complaint, Plaintiff named Steven Johnson as a defendant.  When he submitted his complete IFP application in July 2009, to have his case re-opened, Plaintiff asked that his Complaint be corrected to name Sean Thomas as the Warden of the Atlantic County Justice Facility, and to have Steven Johnson removed from the Complaint.  (See Docket entry no. 3).

On April 5, 2009, the pain became unbearable, and believing the boil to be a MRSA staph infection, Plaintiff again requested medical attention.  After other inmates also complained, and allegedly due to concern about the high contagion of a MRSA infection, Plaintiff was taken to medical.  He was examined, prescribed antibiotics and given band-aids for the boil.  No report was done with respect to Plaintiff's medial treatment.

In his second, related action, Plaintiff alleges that he was committed to the ACJF on or about February 26, 2009, and received a notification of the rules and regulations he must follow while confined at ACJF.  Plaintiff complains that the form he was asked to sign, suggests that Plaintiff would use the ACJF for his own personal gain.  He further complains that he must pay a "user fee" of $50.00 while he is confined at ACJF, which covers living expenses, and indigent kits for hygiene.  The form also requires that inmates maintain a $50.00 balance in their institution for commissary purchases.  Further, the form sets forth standard nominal fees for medical care.  Plaintiff attaches to the second Complaint, excerpts from the inmate handbook he received when he was confined at ACJF.

Based on the unsanitary conditions at the Atlantic County Justice Facility ("ACJF"), and alleged lack of medical care, Plaintiff now asks to be released, to have his intake funds returned to him, and to have the ACJF be disinfected.

(Complaint, Civil Action No. 09-2610 (RMB)), at § V).   Plaintiff also asks for an unspecified amount of monetary compensation, and asks that defendant Warden Sean Thomas be investigated for embezzlement.   (Supplemental Complaint, Civil Action No. 09-4478 (RMB)).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.   The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.   28 U.S.C. §§ 1915(e)(2)(B) and 1915A.   This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.   See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).   See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).   The Court must

5

"accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in

6

discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[2]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausible give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, ___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] that

---

[3] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

applied to federal complaints before Twombly. Fowler, 2009 WL
2501662, *5. The Third Circuit now requires that a district
court must conduct the two-part analysis set forth in Iqbal when
presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated. The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.] In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief. A complaint has to
> "show" such an entitlement with its facts. See Phillips,
> 515 F.3d at 234-35. As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at
> 1949-50]. This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this
pro se pleading must be construed liberally in favor of
Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89
(2007). Moreover, a court should not dismiss a complaint with
prejudice for failure to state a claim without granting leave to
amend, unless it finds bad faith, undue delay, prejudice or
futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-
111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.
2000).

III.   <u>SECTION 1983 ACTIONS</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   <u>ANALYSIS</u>

A.  <u>Denial of Medical Care Claim</u>

It would appear that Plaintiff may be asserting a denial of medical care claim because he was not treated immediately for a painful boil, which he believed to be MRSA.  Plaintiff was treated several days after he and other inmates expressed concern about the possibility of a contagious MRSA infection.  Plaintiff was examined, given antibiotics and band-aids to cover the boil. He does not allege that a MRSA infection was diagnosed.

It is not clear from the Complaint whether plaintiff is a convicted inmate or a pretrial detainee.  Therefore, this Court will review the claim under both the Fourteenth Amendment standard and the Eighth Amendment standard.

For pretrial detainees, denial of medical care claims are considered under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983)(holding that the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial); Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  See also Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; *i.e.* whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of  guilt....") (citing Hubbard, 399 F.3d at 158).  In Hubbard, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and

non-medical conditions of pretrial detainees.  399 F.3d at 165-67.

As noted above, it would appear that Plaintiff is alleging that he was denied proper medical care when he was prescribed antibiotics and band-aids for an infected boil.  Plaintiff was concerned that his boil was a MRSA infection, but he does not allege that MRSA was diagnosed, or that any further complications arose after he received treatment in April 2009.  In fact, in his supplemental Complaint, filed on or about August 31, 2009, Plaintiff does not allege any further problems with his medical care and treatment for the infection.  Thus, accepting these allegations as true at this preliminary screening stage, as this Court is required to do, the Complaints do not support a claim that defendant failed to provide Plaintiff medical care for the purpose of punishing him or retaliating against him in any way. See Hubbard v. Taylor, 399 F.3d 150, 158-63 (3d Cir. 2005); Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993). Accordingly, Plaintiff's denial of medical care claim should be dismissed for failure to state a claim.

The claim also does not appear to satisfy the Eighth Amendment standard.  The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must

12

allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  <u>Estelle</u>, 429 U.S. at 106; <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." <u>Atkinson v. Taylor</u>, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations omitted); <u>see also Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert</u>. <u>denied</u>, 486 U.S. 1006 (1988).

The second element of the <u>Estelle</u> test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  <u>See Natale</u>, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of

13

and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm. <u>Farmer v. Brennan</u>, 511 U.S.
825, 837-38 (1994). Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in itself indicate
deliberate indifference. <u>Andrews v. Camden County</u>, 95 F. Supp.2d
217, 228 (D.N.J. 2000); <u>Peterson v. Davis</u>, 551 F. Supp. 137, 145
(D. Md. 1982), <u>aff'd</u>, 729 F.2d 1453 (4th Cir. 1984). Similarly,
"mere disagreements over medical judgment do not state Eighth
Amendment claims." <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir.
1990). "Courts will disavow any attempt to second-guess the
propriety or adequacy of a particular course of treatment ...
[which] remains a question of sound professional judgment."
<u>Inmates of Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 762 (3d
Cir. 1979) (internal quotation and citation omitted). Even if a
doctor's judgment concerning the proper course of a prisoner's
treatment ultimately is shown to be mistaken, at most what would
be proved is medical malpractice and not an Eighth Amendment
violation. <u>Estelle</u>, 429 U.S. at 105-06; <u>White</u>, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended

14

treatment.  See Rouse, 182 F.3d at 197.  The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment.  Atkinson, 316 F.3d at 266.  See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Here, Plaintiff does not allege a serious medical need. There was no diagnosis that the boil was a MRSA infection. However, to the extent that it was first believed to be MRSA, Plaintiff did receive medical care and treatment for the infected boil.  Specifically, he received antibiotics and band-aids to cover the wound.  Thus, under these circumstances, Plaintiff can not show deliberate indifference under Estelle.  Accordingly, any Eighth Amendment denial of medical care claim also will be dismissed for failure to state a cognizable claim for § 1983 liability.

B.  "User Fee" Claim

Plaintiff next asserts that the imposition of a $50.00 "user fee" and other deductions from his prison account for payment of

medical fees is a violation of due process and his right against unreasonable seizures.

Plaintiff states that upon entry to the ACJF, he received and signed a waiver form that explains that a user fee of $50.00 will be assessed against an inmate each month to reimburse Atlantic County for a small portion of their living expenses. Inmates will be prohibited from making commissary purchases unless they have a minimum balance of $50.00 in their institutional account.  However, purchases of an indigent hygiene kit is permitted.  Funds in the inmate's account may be used for penalties, fines, and/or bails.  (See attachment to Complaint (Civ. No. 09-4478 (RMB)), at page 17 of 35 pages).

"User fees", such as the one at issue here, have been determined to be nominal surcharges and non-punitive, and therefore, they do not violate due process.  See Tinsley v. Del Rosso, 2008 WL 2236598, *5 (D.N.J.  May 30, 2008); Fuentes v. State of New Jersey Office of Public Defenders, 2006 WL 83108 at *8 (D.N.J. Jan. 11, 2006).  In Myrie v. Commissioner, N.J. Dep't. Of Corrections, 267 F.3d 251 (3d Cir. 2001), the Third Circuit held that N.J.S.A. 30:4-15.1, effective July 1998, which required all state inmates to pay a 10% surcharge on commissary purchases in order to fund the Victims Crime Compensation Board ("V.C.C.B."), was valid.  The court found that the surcharge was not so punitive in purpose or effect to constitute "punishment" in violation of the Double Jeopardy Clause, the Ex Post Facto

16

Clause or Bill of Attainder provision of the Constitution.  The
surcharge was not excessive and was rationally related to
legitimate governmental interest of "bridging the funding gap for
the crime victims compensation program," and did not offend
constitutional due process guarantees.  <u>Myrie</u>, 267 F.3d at 255-
263.

The Third Circuit also considered a similar challenge in
<u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410 (3d
Cir. 2000).  The plaintiff in <u>Tillman</u> challenged the legality and
constitutionality of a $10 per day fee for housing costs imposed
on prisoners in the Lebanon County Prison.  That plaintiff
complained that the prison lacked the authority to implement a
Cost Recovery Program; however, the Third Circuit held that the
County was vested with the power to govern and manage
correctional institutions, which included the power to impose a
housing fee.  <u>Id</u>., 221 F.3d at 423.  The <u>Tillman</u> court stated,
"[a]lthough we have not uncovered a statute explicitly providing
for the deductions at issue here, the Cost Recovery Program was
duly promulgated, not by the state, but by the county prison
board, which has "exclusive" authority regarding "the government
and management" of the facility."  <u>Id</u>. (citing 61 <u>Pa. Cons.Stat</u>.
§ 408(a)(1)) (current version at 61 <u>Pa. Cons.Stat. Ann</u>. § 1731).
That statute states in part that, "[t]he board ... shall provide
for the safekeeping, discipline and employment of inmates and the

17

government and management of the correctional institution." 61 Pa. Cons.Stat. Ann. § 1731(a)(3).

Furthermore, the Third Circuit highlighted other court decisions that upheld similar policies finding no "barriers to the promulgation of such programs by prisons." Tillman, 221 F.3d at 423 (citing Reynolds v. Wagner, 128 F.3d 166, 170, 183 (3d Cir. 1997)(upholding program that was created by county prison); Mastrian v. Schoen, 725 F.2d 1164, 1165-66 (8th Cir. 1984) (upholding programs instituted by correctional officials). Accordingly the Third Circuit held that the Lebanon County Prison Board had the authority to promulgate the Cost Recovery Program.

Here, there is broad authority granted to county board of chosen freeholders by the New Jersey Legislature under N.J. Stat. Ann. §§ 30:8-19 and 30:8-23,[4] as well as the Tillman court's decision to permit the Lebanon Valley Correctional Facility to charge inmates a housing fee based on similar legislative authority.

---

[4] N.J. Stat. Ann.. § 30:8-19 states, "[i]t shall be lawful for the board of chosen freeholders of any county in this state to assume and thereafter to exercise the custody, rule, keeping and charge of the county jails in their respective counties, and of the prisoners therein ..." Furthermore, N.J. Stat. Ann. § 30:8-23 states,
> When the board of chosen freeholders of any county shall have assumed the custody, rule, keeping and charge of the county jail of such county pursuant to section 30:8-19 of this title, such board shall prescribe rules and regulations for the management and conduct of such jail, and the employment, maintenance and keeping of the prisoners therein ...

Moreover, there is nothing to suggest that the user fee is imposed as an impermissible penalty.  The Third Circuit has clearly announced that daily assessments like the one at issue here, do not constitute a penalty, and that a cost recovery program is more properly understood as a transfer of funds than a way to regulate prison behavior or as a punitive measure. Tillman, 221 F.3d at 420.  The Tillman court reasoned that: "A prisoner's term of incarceration cannot be extended, nor can he be reincarcerated, for failure to pay a negative balance ... the fees can hardly be called fines when they merely represent partial reimbursement of the prisoner's daily cost of maintenance, something he or she would be expected to pay on the outside." Id. at 420.

Therefore, this Court finds that the ACJF user fee is a nominal and non-punitive charge.

This Court further concludes that imposition of the user fee in this case does not violate any due process rights of Plaintiff.  The Fourteenth Amendment prohibits the State from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  In order to bring a procedural due process claim, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir.

19

2000).  The Third Circuit has established that inmates have a property interest in funds held in prison accounts.  Reynolds v. Wagner, 128 F.3d 166, 179 (3d Cir. 1997).  "Thus, inmates are entitled to due process with respect to any deprivation of this money."  Id. (citing Mahers v. Halford, 76 F.3d 951, 954 (8th Cir. 1996), cert. denied, 519 U.S. 1061 (1997)).

Thus, the Court is left to consider the adequacy of the procedural safeguards made available to inmates in the Atlantic County Justice Facility.  In considering a due process claim, the Court must balance the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation.  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  In some cases, takings of property by the State require pre-deprivation notice and a hearing.  But where the State must take quick action, or where it is impractical to provide meaningful pre-deprivation process, due process will be satisfied by a meaningful post-deprivation remedy.  Tillman, 221 F.3d at 422(citing Parratt v. Taylor, 451 U.S. 527, 539 (1981).

Here, inmates are given notice of the User Fee upon entrance to the Correctional Facility through the New Inmate Orientation Sheet and the Inmate Handbook.  Pursuant to prison policy outlined in the Inmate Handbook, inmates have an opportunity to challenge the deductions from their inmate accounts through the general internal inmate grievance procedure provided for them.

(See Section Two, B. Inmate Grievances of the Inmate Handbook, attached to the supplemental Complaint).  See Barney v. Camden County Bd. of Chosen Freeholders, --- F. Supp.2d ----, 2009 WL 5103206, *7, 8 (D.N.J. Dec 17, 2009)(NO. CIV. A. 08-4115).  See also Tillman, 221 F.3d at 422.

In Tillman, the plaintiff challenged the adequacy of procedural safeguards in place when the prison only provided the opportunity for a post-deprivation hearing.  In that case, the Third Circuit stated that the procedures afforded by the prison satisfied the constitutional requirements of due process.  Specifically, the Tillman court stated that,

> It is impractical to expect the prison to provide predeprivation proceedings under these circumstances.... The assessments and takings pursuant to the program involve routine matters of accounting, with a low risk of error.  To the extent that mistakes such as erroneous assessments or incorrect takings might occur, they may be corrected through the prison's grievance program without any undue burden on a prisoners' rights.  On the other hand, to require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the county's costs of incarcerating prisoners.

Id. at 422.

Here, the Court finds that the general inmate grievance procedure in place at ACJF also adequately protects the rights of prisoners without creating an unfair burden on the government.  Inmates are afforded adequate notice and the opportunity for hearing as required under the Constitution.  Therefore, the user

fee does not violate due process guarantees, and this claim should be dismissed for failure to state a claim at this time.

Finally, Plaintiff alleges that the fee exceeds the Atlantic County resolution that was passed on December 3, 1996, which prescribed $35.00.  Consequently, Plaintiff contends that the defendant is "skimming" or embezzling the funds.  This claim is without merit and must be dismissed.  It is clear from the Inmate Handbook provided to Plaintiff when he arrived at ACJF that the initial resolution on December 3, 1996 regarding the user fee was amended and the most recent resolution set forth a chargeable user fee of $50.00.  Therefore, this claim is without any basis in law or fact and must be dismissed for failure to state a claim.

C.   Conditions of Confinement Claim

Plaintiff also contends that the conditions of his confinement are unconstitutional.  Principally, he alleges that the ACJF has a longstanding problem with exposure to the MRSA infection.  As stated above, it appears from the Complaint that Plaintiff may be a pretrial detainees at the ACJF.  A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d

22

Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether

such a detainee has been deprived of liberty without due process

is governed by the standards set out by the Supreme Court in Bell

v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only the
> protection against deprivation of liberty without due
> process of law, we think that the proper inquiry is whether
> those conditions amount to punishment of the detainee.  For
> under the Due Process Clause, a detainee may not be punished
> prior to an adjudication of guilt in accordance with due
> process of law. ...
>
> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...
>
> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose.  Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

Here, Plaintiff alleges that he was exposed to MRSA, a serious and dangerous staph infection that is prevalent at the ACJF due to the overcrowded and unsanitary conditions.  More specifically, he alleges that he was wrongfully exposed to a known condition, like MRSA, which can cause serious and life-threatening health and medical problems.  Thus, assuming for purposes of this sua sponte screening that the allegations of the Complaint are true, and Plaintiff can demonstrate that the Warden knowingly did nothing to prevent the spread of a known and serious infection, the adverse conditions as alleged may be excessive in relation to its stated purpose, and a court may infer that these conditions are intended as punishment.  See Hubbard I, 399 F.3d at 158-63; Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  Therefore, the Court will allow this Fourteenth Amendment conditions claim to proceed at this time.

V.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, Plaintiff's claims asserting denial of medical care and an unconstitutional imposition of a "user fee" will be dismissed without prejudice for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), and 1915A(b)(1).  Finally, plaintiff's claim asserting unconstitutional conditions of confinement in violation of the Fourteenth Amendment will be allowed to proceed at this early screening stage.  An appropriate order follows.


<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:<u> February 24, 2010</u>

25